2025 IL App (1st) 221011-U

No. 1-22-1011

THIRD DIVISION
June 25, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

<table>
<tr><td>THE PEOPLE OF THE STATE OF ILLINOIS,</td><td>)</td><td>Appeal from the Circuit Court</td></tr>
<tr><td></td><td>)</td><td>of Cook County.</td></tr>
<tr><td>Plaintiff-Appellee,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>No. 21 CR 02742</td></tr>
<tr><td>v.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>The Honorable</td></tr>
<tr><td>LAWRENCE BARLOW,</td><td>)</td><td>Gregory Paul Vazquez,</td></tr>
<tr><td></td><td>)</td><td>Judge Presiding.</td></tr>
<tr><td>Defendant-Appellant.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
</table>

_____

JUSTICE REYES delivered the judgment of the court.
Presiding Justice Lampkin and Justice Martin concurred in the judgment.

**ORDER**

¶ 1   *Held:*  Affirming defendant's conviction and sentence where (1) defense counsel did not provide ineffective assistance of counsel when he failed to propose a lesser-included offense jury instruction and instead presumably used an "all-or-nothing" defense as there was a chance that the jury could acquit on the greater offense and (2) the trial court did not abuse its discretion by sentencing the defendant to 20 years in prison.

¶ 2   Following a jury trial, defendant Lawrence Barlow was convicted of aggravated robbery (720 ILCS 5/18-1(b)(1) (West 2020)) and sentenced to 20 years in prison and to a

three-year term of mandatory supervised release (MSR). In this appeal, defendant contends that his defense counsel was ineffective for failing to request a jury instruction for simple robbery where certain evidence suggested that defendant did not indicate he had a weapon. He also argues that his 20-year prison term is excessive and that he should have been sentenced to 18 months of MSR, not three years. For the reasons discussed below, we modify defendant's MSR term to 18 months, and we otherwise affirm his conviction and sentence.

¶ 3                                    BACKGROUND

¶ 4        Defendant was charged by indictment with one count of aggravated robbery relating to events on January 24, 2021. The evidence presented at trial included the following.

¶ 5        Jesal Dave (Dave) testified that he was working the night shift as a store clerk in a 7-Eleven convenience store located on the 600 block of South Boulevard in Oak Park, Illinois, on January 24, 2021. At approximately 5:30 a.m., defendant entered the store and asked for juice. Dave, who was standing behind the checkout counter, pointed toward the juice section. Defendant picked up a bottle of juice and walked to the counter on the customer side.

¶ 6        According to Dave, defendant then asked him to open the cash register and hand him the contents. Dave testified that he was shocked. Defendant repeated himself, stating: "[H]and me over everything you have in the counter or else I'll shoot you." Dave testified that defendant placed his right hand in his jacket pocket; he interpreted this gesture as defendant having a weapon. Dave testified he did not want to get hurt, so he opened the register and handed its contents—approximately $80 to $100—to defendant. Defendant then directed him to lift the tray in the register to reveal whether there was additional currency underneath the tray. Dave complied, and defendant then left the store.

¶ 7        Dave immediately called 911 and provided a description of defendant's appearance, the amount of currency taken, and the direction in which defendant proceeded after leaving the store. Dave testified that police officers arrived at the store approximately two minutes later, while he was still on the telephone with 911.

¶ 8        Dave then provided an in-person description of defendant to one of the officers, Oak Park police officer Alejandro Flores (Officer Flores), including his approximate height, clothing, and other physical features. Shortly thereafter, officers transported Dave to another location where an individual had been detained. Dave informed the officers that the detained individual—later identified in court as defendant—was the person who robbed the store.

¶ 9        The State introduced two 7-Eleven surveillance videos which captured the incident from two angles. One video was from the side view of the counter, and the second video was an overhead view facing the counter. The videos were consistent with Dave's testimony. The State played the surveillance videos for the jury, as Dave described the series of events. The jury also listened to Dave's 911 call.

¶ 10       Officer Flores testified that as he spoke with Dave, he heard on the police radio that an individual fitting the description was in a vehicle that had been pulled over by the police. The officers radioed that they needed assistance, as the individual was resisting them. Officer Flores drove to the scene with Dave and directed him to stay in the police vehicle. After the individual was safely detained, Dave identified him as the robber "with no hesitation."

¶ 11       Another responding officer, Officer Leonardo Cunzalo (Officer Cunzalo), testified that, even though the 911 call did not reference a vehicle, he noticed a white Ford Expedition driving eastbound on South Boulevard approximately four or five blocks from the store. As the vehicle had "sparked [his] interest," he followed the vehicle as it traveled through alleys and streets at

an excessive speed. Officer Cunzalo activated the lights on his police vehicle, but the white vehicle did not immediately stop. When the vehicle stopped, Officer Cunzalo observed the driver and an occupant in the front passenger seat. He noticed that the driver—whom he identified in court as defendant—matched the description of the robber. As Officer Cunzalo spoke with the passenger, he observed defendant as he attempted to flee and as he resisted efforts to handcuff him and place him in a police vehicle. Defendant repeatedly informed officers that "he's not going to jail" and "the police are going to have to kill him." During cross-examination, Officer Cunzalo testified that no weapons or money were recovered from defendant or the vehicle.

¶ 12    The defense did not call any witnesses. At closing, defense counsel argued that the State had failed to prove certain elements for a conviction of aggravated robbery. Counsel noted that the police had not recovered any proceeds and that the videos were unclear as to whether defendant had a weapon. He argued that the videos did not show defendant placing his arm inside his jacket or gesturing as if he had a firearm. Defense counsel also highlighted the seemingly calm demeanor displayed by both defendant and Dave, *e.g.*, defendant did not reach over the counter or otherwise exhibit any aggressive movements.

¶ 13    The jury received instructions solely on the charge of aggravated robbery and, after deliberations, found defendant guilty of the charge.

¶ 14    Defendant subsequently filed a motion for a new trial, arguing in part that the videos did not demonstrate that he had made actions or gestures indicating that he was armed with a firearm or other dangerous weapon. Defendant further contended that the videos could not corroborate Dave's testimony, as they lacked audio. The court denied the motion, finding there was evidence other than the videos and that Dave's testimony alone was sufficient.

¶ 15          Defendant's presentencing investigation report (PSI) reviewed his family and personal history, including his extensive criminal history. Defendant reported that he had a "rough" childhood, *e.g.*, his mother passed away when he was 12 years old, and he was physically and mentally abused by his father. He became involved with a gang at age 13 and began regularly consuming alcohol at age 20. He reported using crack cocaine and being a "heavy drinker" for most of his adult life, which had resulted in family, professional, and legal problems. Although he completed a substance abuse treatment program during his most recent incarceration, he was under the influence of drugs when arrested for the instant robbery. He acknowledged that he had a close relationship with his family, who provided him with "very strong" emotional and personal support.

¶ 16          During the sentencing hearing, the State observed that defendant was convicted of aggravated robbery, a Class 1 felony with an extended sentencing range of 4 to 15 years, but based on his criminal background, the conviction became Class X mandatory, making him eligible for a prison term of 6 to 30 years. After recounting the events of the robbery at issue, the State noted that defendant previously had been convicted of robbery or aggravated robbery six times. Arguing that defendant had refused to accept responsibility for his actions, the State requested the imposition of a 22-year prison sentence.

¶ 17          Defense counsel argued that defendant was 54 years old and, although he had been "in and out of the criminal system," defendant had acknowledged his drug problem and wished to receive help for his addiction. Furthermore, counsel relayed that defendant had a large family that supported and loved him, including three adult children. According to counsel, the PSI also reflected that defendant had taken responsibility and was remorseful about the offense.

Defense counsel then requested that defendant be sentenced to something "closer towards the minimum," *i.e.*, 10 years, which was the offer made to defendant in a plea deal before the trial.

¶ 18　　In allocution, defendant apologized to the court and his family and stated, "I'm taking responsibility for what I did." Defendant stated to the trial court: "Whatever you feel is fit, I will accept that." He also apologized to the 7-Eleven clerk "for making him feel uncomfortable."

¶ 19　　The trial court stated that it reviewed the PSI and considered the aggravating and mitigating factors in section 5-5-3.1 of the Unified Code of Corrections (730 ILCS 5/5-5-3.1 (West 2022)), including defendant's background, age, and the hardship to defendant and his family. The trial court stated that defendant has led a "life of crime": "[r]obbery, aggravated robbery, repeatedly, repeatedly, as if to thum[b] his nose would be a euphemism at the criminal justice system." The trial court expressed concern as to whether defendant would be a threat upon his release from prison. The trial court sentenced defendant to 20 years of imprisonment at 50% with an MSR term of three years.

¶ 20　　　　　　　　　　　　　　ANALYSIS

¶ 21　　On appeal, defendant raises three issues. The defendant first contends that defense counsel was ineffective for not requesting the pattern jury instruction for the lesser-included offense of simple robbery. Defendant also contends that, as a 54-year-old, a 20-year sentence is excessive given the minimal harm caused. The final issue defendant raises is that he is entitled to 18 months of MSR instead of the three years he was given where the statutory MSR for a Class X aggravated robbery was 18 months when defendant was convicted and sentenced.

¶ 22                                    Ineffective Assistance of Counsel

¶ 23          Defendant asserts that defense counsel was ineffective for not requesting the pattern jury instruction for the lesser-included offense of simple robbery. Under Illinois law, a robbery becomes an "aggravated robbery" when the offender "indicat[es] verbally or by his or her actions to the victim that he or she is presently armed with a firearm or other dangerous weapon," even if such is not actually the case. 720 ILCS 5/18-1(a), (b)(1) (West 2020). Defendant's defense theory was that the State did not prove the aggravating element which indicated he had a dangerous weapon. Defendant thus contends that the jury should have received instructions for simple robbery in addition to aggravated robbery.

¶ 24          Under the United States Constitution's Sixth Amendment, the criminally accused has the constitutional right to effective assistance of counsel. U.S. Const. amend. VI. This right has been incorporated into the Illinois Constitution. Ill. Const. 1970, art. 1, § 8. "The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding." *Strickland v. Washington*, 466 U.S. 668, 691-92 (1984). A claim of ineffective assistance of counsel is analyzed under *Strickland*'s two-prong test where defendant must show: (1) defense counsel's performance was so deficient it fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's performance, the result of the proceeding would have been different. *Id.* at 687-88. Both prongs must be satisfied; otherwise, the claim fails. *People v. Gallagher*, 2012 IL App (1st) 101772, ¶ 25. Our supreme court has adopted the *Strickland* test in considering an ineffective assistance of counsel claim (*People v. Albanese*, 104 Ill. 2d 504, 526 (1984)), and we review a claim of ineffective assistance of counsel under a *de novo* standard. *In re Leo M.*, 2022 IL App (5th) 190211, ¶ 74.

¶ 25 To satisfy the first prong of *Strickland* the defendant must "identify acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment" and the court must then determine whether such acts or omissions were outside the range of professional, competent assistance. *Strickland*, 466 U.S. at 690. We thus begin by considering whether counsel's conduct in deciding to not seek a jury instruction on robbery falls outside the range of such assistance.

¶ 26 Lesser-Included Offense

¶ 27 A lesser-included offense is an offense that includes all the elements of the greater offense. *People v. Carter*, 389 Ill. App. 3d 175, 184 (2009). "In order for a defendant to be entitled to a lesser-included offense instruction, the evidence must be such that a jury could rationally find defendant guilty of the lesser offense, yet acquit him of the greater." *People v. Medina*, 221 Ill. 2d 394, 410 (2006). When a defendant tenders a lesser-included offense instruction, he is essentially stipulating that the evidence would allow the jury to rationally convict defendant of that lesser-included offense. *Id.* at 408.

¶ 28 In *People v. Brocksmith*, 162 Ill. 2d 224, 229 (1994), our supreme court held that a defendant has the right to decide whether to tender a lesser-included offense. The supreme court reasoned that, like a decision to plead guilty, a decision to tender a lesser-included offense also "relate[s] to the potential loss of liberty on an initially uncharged offense." *Id.* While "it is the defendant's right to decide whether to tender a lesser-included offense instruction *** [that right] is an entirely different matter than a right to actually have the jury instructed on a lesser-included offense." (Emphasis omitted.) *Medina*, 221 Ill. 2d at 402. A determination of whether to submit a jury instruction on a lesser-included offense is considered to be one of trial strategy. *People v. Benford*, 349 Ill. App. 3d 721, 728 (2004). If a lesser-included offense is

not included, it may be due to an " 'all-or-nothing' " defense, in which the jury being presented only the greater offense may acquit altogether. *Id.* at 728-29. This court has declined to find that when counsel advances an "all-or-nothing" defense, the trial court needs to inquire with defendant if he or she agrees with that defense. *People v. Walton*, 378 Ill. App. 3d 580, 588 (2007). Using an "all-or-nothing" defense has been considered a valid trial strategy. *Id.* at 589. Defense counsel's strategy is "virtually unchallengeable" and generally does not support an ineffective assistance of counsel claim. *Id.* at 588-89. The fact that this strategy turned out to be unsuccessful does not equate to counsel's performance being unreasonable. *Id.* at 589.

¶ 29     Defendant points to *People v. Gallagher*, 2012 IL App (1st) 101772, as instructive. In *Gallagher*, the defendant contended that he received ineffective assistance from counsel when counsel failed to request the correct lesser-included offense jury instructions. *Id.* ¶¶ 25-26. The defendant argued that his testimony at trial supported the lesser-included offense of criminal trespass to a residence, but counsel requested only instructions concerning criminal trespass to real property. *Id.* ¶¶ 27, 29. The appellate court agreed and held, quoting *People v. Serrano*, 286 Ill. App. 3d 485 (1997), " '[w]here defense counsel argues a theory of defense but then fails to offer an instruction on that theory of defense, the failure cannot be called trial strategy and is evidence of ineffective assistance of counsel.' " *Id.* ¶ 30.

¶ 30     In this case, for defendant to be successful on *Strickland*'s first prong, he must show that defense counsel's representation fell below an objective standard of reasonableness. Defendant argues that, like in *Gallagher*, his defense counsel's performance was unreasonable when counsel failed to request a jury instruction on the lesser-included offense of aggravated robbery, simple robbery. Defendant argues that his defense theory revolved around the theory that there was no weapon, and that defense counsel argued as such. Specifically, during closing

and after the State had highlighted the elements of aggravated robbery, defense counsel in his closing argument maintained that the elements of the charge had not been met. Defense counsel argued that the videos did not clearly show whether defendant had placed his hand or arm inside his jacket and that there was no movement seen in the video to indicate that defendant was acting or pretending like he had a weapon in his pocket.

¶ 31        We cannot agree that this case is analogous to *Gallagher*, as defendant contends. In that case, defense counsel provided the incorrect lesser-included offense for the court's consideration in the jury instructions, while here, defense counsel did not submit any lesser-included offense jury instructions. Moreover, counsel in *Gallagher* affirmatively conceded to the jury that the evidence was sufficient to support a conviction on the lesser-included offense of trespass, which did not occur in this case. See *Gallagher*, 2012 IL App (1st) 101772, ¶ 27. Here by contrast, defense counsel used an "all-or-nothing" defense. Indeed, defense counsel even reminded the jury that the standard of finding someone guilty is beyond a reasonable doubt, and if there was any doubt in the jury's mind that they had to "throw this out." This approach was reasonable given that the videos shown during the trial did not clearly show whether defendant had a weapon, there was no weapon found, and the demeanor of both defendant and Dave was calm during the incident. Counsel could certainly have concluded that the best approach was to deny the jury the ability to convict on the lesser offense in the hope that it found the evidence as to the presence of a weapon to be unconvincing. Clearly, defense counsel strategized that if he could create some doubt as to one of the elements in aggravated robbery, then the jury could not find defendant guilty of aggravated robbery. While defense counsel's "all-or-nothing" strategy was ultimately unsuccessful, success or not does not make

counsel's decision unreasonable. Accordingly, we cannot find that counsel's performance was constitutionally deficient.

¶ 32    As defendant has failed to establish ineffective assistance based on the first prong of *Strickland*, we have no need to consider his arguments regarding the second prong. *People v. Boots*, 2022 IL App (2d) 200640, ¶ 35.

¶ 33                                                    Sentencing

¶ 34    Defendant next contends that as a 54-year-old, a 20-year sentence is excessive given the minimal harm caused. Defendant asserts that there is nothing in the record supporting the trial court's decision to double his sentence from the one offered at the plea negotiations. Defendant also contends the trial court's focus at sentencing was on his criminal history, disregarding his decade-long addiction.

¶ 35    "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. In sentencing a defendant, the trial court must consider all aggravating and mitigating factors, including: "the defendant's age, demeanor, habits, mentality, credibility, criminal history, general moral character, social environment, and education, as well as the nature and circumstances of the crime and of defendant's conduct in the commission of it." *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002); see 730 ILCS 5/5-5-3.1 (West 2022). An appellate court will give great deference to the trial court, as "the trial court is in the best position to consider the defendant's credibility, demeanor, general moral character, mentality, social environment, habits and age." (Internal quotation marks omitted.) *People v. Musgrave*, 2019 IL App (4th) 170106, ¶ 56.

¶ 36    In reviewing the sentence of a defendant, the appellate court may not substitute its own judgment for that of the trial court and will presume that a sentence imposed within the statutory range is proper. *Id.* However, even if the sentence is within statutory limitations, it may be overturned where the trial court has abused its discretion. *People v. Calhoun*, 404 Ill. App. 3d 362, 385 (2010). A trial court abuses its discretion when it sentences a defendant in an arbitrary, fanciful, or unreasonable manner. *People v. Etherton*, 2017 IL App (5th) 140427, ¶ 26. In that case, a reviewing court has the power to reduce the sentence imposed by the trial court. *Id.* ¶ 19.

¶ 37    Here, we find that the trial court did not abuse its discretion. At defendant's sentencing, the trial court heard arguments from the State, which highlighted defendant's criminal history, but also heard arguments from defense counsel about defendant's age, the hardship he and his family have endured, defendant's history with alcohol and drug use, and that he had previously completed substance abuse treatment. The trial court also heard from defendant, who apologized to the court, his family, and the 7-Eleven clerk. The trial court then stated that it had reviewed the relevant factors contained in section 5-5-3.1 of the Unified Code of Corrections (730 ILCS 5/5-5-3.1 (West 2022)) and had reviewed the PSI. Although the trial court's sentencing statement heavily focused on defendant's criminal history, the trial court reviewed the PSI, other evidence and, having observed defendant's demeanor and credibility through pretrial, trial, and posttrial proceedings, sentenced defendant to 20 years. We cannot find that its decision to do so constituted an abuse of discretion.

¶ 38    We also note that defendant's sentence was within statutory limits for Class X, that of 6 to 30 years, and was a number between what the State and defense counsel requested. We further observe that defendant had previously been sentenced to 14 years' imprisonment for

the same crime committed less than a decade earlier. We agree with the trial court that defendant has repeatedly committed the same crime of robbery or aggravated robbery, has received lengthy sentences, and continues to commit the same unlawful act. Therefore, the trial court did not abuse its discretion in sentencing defendant to 20 years' imprisonment.

¶ 39                                    Mandatory Supervised Release

¶ 40        Defendant finally contends that he is entitled to 18 months of MSR instead of the three years he was given, where the statutory MSR for a Class X aggravated robbery was 18 months when defendant was convicted and sentenced. The State agrees with defendant. Upon review, this court also agrees. Section 5-8-1(d)(1.5) of the Unified Code of Corrections (730 ILCS 5/5-8-1(d)(1.5) (West 2020)), which became effective July 1, 2021, provides that Class X felonies have an MSR of 18 months. We therefore modify the mittimus to reflect the accurate MSR length.

¶ 41                                          CONCLUSION

¶ 42        For the reasons set forth above, we find that defendant's claim of ineffective assistance of counsel fails where defense counsel acted in a reasonable manner when he did not seek an instruction on the lesser-included offense of robbery. We further find that the trial court did not abuse its discretion when sentencing defendant to 20 years' imprisonment but did err in its sentence as it relates to the MSR.

¶ 43        Affirmed; mittimus corrected.